**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JENNIFER A. JOAS**
Joas & Stotts
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DARCI J. MCFADDEN,              )
                               )
    Appellant-Defendant,        )
                               )
      vs.                      )      No. 39A05-1406-CR-255
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.         )

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Darrell M. Auxier, Judge
Cause No. 39C01-1207-FA-927

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Darci McFadden appeals her sentence following the revocation of her probation. McFadden raises one issue, which we revise and restate as whether the trial court abused its discretion in ordering her to serve eight years of her previously suspended sentence. We affirm.

FACTS AND PROCEDURAL HISTORY

On July 27, 2012, the State charged McFadden with dealing methamphetamine as a class A felony, conspiracy to deal in methamphetamine as a class A felony, and possession of methamphetamine as a class B felony. On October 25, 2013, McFadden pled guilty to dealing methamphetamine as a class B felony, and the State agreed to dismiss the remaining charges. On November 13, 2013, the court accepted McFadden's guilty plea and sentenced her to ten years with ten years suspended except for time served and ordered that she serve the suspended portion of her sentence through community corrections as a term of her probation.

During orientation at community corrections, McFadden was informed that she could not have over-the-counter medicines or mouthwash that contain alcohol. At some point, McFadden tested positive for alcohol. On February 9, 2014, McFadden, who wore a GPS bracelet, was out of range or was in a location not previously approved by her case manager, Heather Kindoll, or any other community corrections staff.

On February 11, 2014, McFadden tested positive for Xanax, did not produce a prescription for Xanax, and did not inform Kindoll that she had a prescription. At some point, McFadden had a conversation with Kindoll about her testing positive for Xanax,

2

and McFadden admitted to using it and said that she was stressed and overwhelmed with her health and her family being sent to the Department of Correction.

Kindoll issued an administrative agreement with McFadden based upon her positive tests for Xanax and alcohol and her being out of range, pursuant to which McFadden was to obtain a substance abuse evaluation and perform twenty-four hours of community service. The administrative agreement was intended to "provide a sanction and try to keep it out of the courts." Transcript at 11. Kindoll learned that McFadden went to obtain a substance abuse evaluation and that "through insurance issues she could not be seen by that particular therapist at that time and was offered to stay until 2 p.m. that afternoon to see the therapist that her insurance covered," but McFadden did not stay. Id. at 16. McFadden mentioned concerns that she might not be able to afford the evaluation, and Kindoll told her that if there was an issue to talk to her "after the fact so that way we can maybe discuss helping with it." Id. McFadden did not complete either requirement of the administrative agreement.

On March 27, 2014, McFadden was out of range without authorization. McFadden told Kindoll that she went to McDonald's and the bank around midnight because she needed to obtain money to pay her brother. Kindoll told McFadden that "midnight was not the appropriate time to be doing that." Id. at 13.

On April 21, 2014, the State filed a verified petition to revoke community corrections/probation. The State alleged that McFadden violated probation by using alcohol on or about January 27, 2014, by being out of range without authorization from

14:22 to 16:09 and from 18:20 to 20:48 on February 9, 2014, and by using Xanax on or about February 11, 2014. The State also alleged, "[a]s a sanction, [McFadden] was given an administrative agreement to obtain a substance abuse evaluation and to complete 24 hours of community service," and McFadden "failed to comply with the administrative agreement." Appellant's Appendix at 98-99. The State also alleged that she violated probation by being out of range without authorization from 23:54 to 00:58 on March 28, 2014, and by failing to pay fees as directed.

On May 21, 2014, the court held a hearing. Kindoll testified to the foregoing facts regarding McFadden's violations. McFadden testified that she had some health issues regarding stomach pain and rectal bleeding that began four months earlier and that she went on leave at work under the Family Medical Leave Act beginning March 18, 2014. She testified that she was not aware that she consumed alcohol but that she did use mouthwash with alcohol and also Dayquil and Nyquil because she had a cold and was working twelve hours per day.

When asked about being out of range from 2:22 p.m. to 4:09 p.m. and from 6:20 p.m. to 8:48 p.m. on February 9, 2014, McFadden answered: "The only thing that I could think of on that date is where I went to [King's Daughter's Hospital] to get my report for my CAT scan for uh . . . to take down with me to Clark County." Transcript at 24. She indicated that she did not know for a fact that occurred on February 9, 2014, but that it was her best guess. She later testified that she did not have any documentation from King's Daughter's Hospital. She testified that she told Kindoll that she went to the

4

hospital from 2:30 to 4:00 and then to Clark Memorial Emergency Room from 6:20 p.m. to 9:00 p.m.

When asked about being out of range from 11:54 p.m. to 12:58 a.m. on March 27, 2014, McFadden testified:

> Uh . . . now that I think about it, I had gotten my check, and I was off work, and I usually go after work to Wal-Mart to cash my check which is at four in the morning, but we can't cash our checks until after midnight, so I figured that it would have been all right for me to go after midnight to cash my check so I could get electric money to my brother for the electric.

Id. at 33. McFadden agreed that she did not have permission to do that.

She testified that at some point in time she had a prescription for Xanax, that the Xanax she took was leftover from her own prescription, and she submitted a Record of Prescriptions showing that she was dispensed Xanax on September 10, 2013. She also testified that she did not give Kindoll her prescription because she did not have it.

With respect to the substance abuse evaluation, McFadden testified that she went to Centerstone and was told that "it would be after two before [she] could see them" and that she had to be at work by 4:00 and that she could not wait that long. Id. at 28. She testified that she called Centerstone, that they kept telling her she needed money to see someone, that she discussed the situation with Kindoll, and that Kindoll did not believe her. As for the community service, McFadden testified that she went to Goodwill and filled out their application packet on March 9, 2014, but Goodwill never contacted her. She also testified that she called an animal shelter and they told her that she needed to go to city hall, but she did not go because she was worried about "getting [her] health

5

covered . . . ." Id. at 41. She testified that it was her intention to complete the evaluation and the community service and that she had been fairly busy with doctor visits, had been in a lot of pain, and had not willfully stopped paying her fees.

The court found that McFadden violated the terms of her community corrections and probation by using alcohol, by being out of range without authorization on February 9, 2014, by using Xanax, by failing to comply with the administrative agreement, and by being out of range without authorization on March 27, 2014. The prosecutor recommended that McFadden's entire sentence be revoked. McFadden's counsel argued that "this is an extremely minor violation" and revocation of her entire sentence was very severe in light of the violation. Id. at 48. On May 30, 2014, the court entered an order revoking McFadden's probation and sentencing her to serve eight years of her previously suspended sentence at the Department of Correction.

## DISCUSSION

The issue is whether the court abused its discretion in ordering McFadden to serve eight years of her previously suspended sentence. McFadden does not challenge the finding that she violated her probation. Rather, McFadden argues that her violations did not warrant the sanction imposed and that evidence was presented that explains and mitigates her violations. She points to the mitigating factors identified by the court in the initial sentencing order dated November 13, 2013. Specifically, she points out that the court had identified the mitigators of her lack of a criminal history, that she was a suitable candidate for community corrections, and that she was in the low-risk category to

6

reoffend. She argues that her violations were minor and that they have no relation to the instant offense. She argues that she was compliant with her placement until she began experiencing serious health problems. She argues that she attempted to complete a substance abuse evaluation and took steps to participate in community service. She also asserts that there was no evidence presented regarding a deadline to complete the substance abuse evaluation or participate in community service. Lastly, she appears to argue that the positive urine screen for alcohol was due to her consumption of cold medicine.

The State asserts that McFadden committed multiple probation violations. The State argues that, out of the fourteen years she could have received under the plea agreement, the court sentenced her initially to a ten-year suspended sentence. The State asserts that, "[h]aving been given this incredible windfall, [McFadden] violated multiple conditions of her probation, including two violations concerning drug use, which was related to [her] original conviction." Appellee's Brief at 9.

Ind. Code § 35-38-2-3(h) sets forth a trial court's sentencing options if the trial court finds a probation violation and provides:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> (1) Continue the person on probation, with or without modifying or enlarging the conditions.

7

(2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

(3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. Prewitt v. State, 878 N.E.2d 184, 188 (Ind. 2007). The Court explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." Id. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. Id. (citation omitted). As long as the proper procedures have been followed in conducting a probation revocation hearing, "the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence." Goonen v. State, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999).

The record reveals that the trial court initially sentenced McFadden to ten years suspended to probation and ordered that she serve the suspended portion of her sentence through community corrections as a term of her probation. At the probation revocation hearing, the trial court indicated that it gave McFadden a break. The court asked McFadden what it told her at the initial sentencing hearing, and McFadden stated that the

8

court told her that she "needed to do what [she] needed to do because [she had] ten years over [her] head" and that if she did not do that she would go to prison. Transcript at 49. At some point, McFadden tested positive for alcohol. While McFadden alleges that the positive result was based upon her use of cold medicine or mouthwash, we observe that McFadden was informed during orientation at community corrections that she could not have over-the-counter medicines or mouthwash that contain alcohol. Twice McFadden was out of range without authorization, and one of those times occurred after midnight. McFadden also tested positive for Xanax and did not provide her case manager with a prescription. Further, McFadden did not complete the substance abuse evaluation or perform twenty-four hours of community service as required by the administrative agreement.

Given the circumstances as set forth above and in the record, including that McFadden committed multiple violations, we cannot say that the court abused its discretion in ordering McFadden to serve eight years of her previously suspended sentence. See Milliner v. State, 890 N.E.2d 789, 793 (Ind. Ct. App. 2008) (holding that the trial court did not abuse its discretion in reinstating the probationer's previously suspended sentence), trans. denied.

CONCLUSION

For the foregoing reasons, we affirm the trial court's order that McFadden serve eight years of her previously suspended sentence.

9

Affirmed.

BAILEY, J., and ROBB, J., concur.